GEORGE L. ARMOUR, as Trustee under a Deed of Trust Made by BERNARD R. ARMOUR for the Benefit of RUTH ARMOUR and Others, Plaintiff, *v.* RUTH ARMOUR et al., Defendants.

GEORGE L. ARMOUR, as Trustee under a Deed of Trust Made by BERNARD R. ARMOUR for the Benefit of RACHEL ARMOUR and Others, Plaintiff, *v.* RACHEL ARMOUR et al., Defendants.

GEORGE L. ARMOUR, as Trustee under a Deed of Trust Made by BERNARD R. ARMOUR for the Benefit of GERALDINE R. THEIL and Others, Plaintiff, *v.* GERALDINE R. THEIL et al., Defendants.

Supreme Court, Special Term, New York County, March 19, 1953.

*Murray I. Gurfein, Christopher J. Taylor* and *James Cahill* for trustee, plaintiff.

*James J. Crisona,* as New York guardian ad litem for Ruth Armour and others, infants, as principal beneficiaries of the trusts.

*Herman B. Goodstein,* as New York guardian ad litem for Ruth Armour and another, infants, as income beneficiaries of the trusts.

*L. B. Frutkin* for Carl E. Schustak and another, as New Jersey guardians ad litem for Ruth Armour and others, infants, as beneficiaries of estate, defendants.

*Chas. M. MacDonald, Cortland C. Kelsey, Stephen P. Duggan* and *Burton M. Abrams* for George F. Lewis and others, as executors of Bernard R. Armour, deceased, defendants.

*James Hopkins* and *William F. Bleakley,* in person, for William F. Bleakley, as successor general guardian of Ruth Armour, an infant, defendant.

*Harold A. Westcott* for A. Chauncey Newlin, as successor general guardian of Toby Armour, an infant, defendant.

*William F. Moore,* as successor general guardian of Rachel Armour, an infant, defendant in person.

*Samuel Mirkin* for Geraldine R. Theil, defendant.

STEUER, J. There are three actions before the court. Each of the actions is by the trustee of an *inter vivos* trust and sought, originally, approval of his accounts. The settlor of each of the trusts was Bernard R. Armour. The trustee is his brother, George L. Armour. The life tenant of the first trust is the settlor's sister Geraldine R. Theil and the remaindermen are the settlor's daughters, Ruth, Rachel and Toby Armour. The life tenant of the second trust is Ruth, the remaindermen being her issue, if any, and failing issue, her sisters Rachel and Toby. The life tenant of the third trust is Rachel. The remaindermen are her issue, if any, and failing issue, her sisters Ruth and Toby.

Ruth, Rachel and Toby are all infants over the age of fourteen years and an application for the appointment of guardians ad litem was made to this court. Special Term, recognizing a possible conflict of interest between the infants as income beneficiaries and principal beneficiaries, appointed two guardians — James J. Crisona, Esq., representing their interests as regards principal, and Herman Goodstein, Esq., as regards income. These guardians entered upon their duties and raised questions

as to the activities of the settlor in regard to a security, stock of the Aspinook Corporation, which at one time was an asset of each of the trusts. The result was that the trustee amended his complaint and included causes of action against the settlor to recover, for the estates, damages for the withdrawal of this stock from the estates. Thereafter the settlor died. He died a resident of New Jersey and his will has been probated in that State and his executors were substituted for the deceased as defendants here.

Plaintiff and the executors arrived at a settlement of the claim for a very substantial sum. And upon the trial of the proceeding the first application was for approval of this settlement. This application was met by a preliminary objection made by persons styling themselves as the general guardians of the three infants. Their objection is that the guardians ad litem were improperly appointed and hence have no standing; that the settlement is subject to their approval; and as they have received no notice of the proceedings they are not in a position to approve or oppose.

Several reasons have been advanced why the appointment of the guardians ad litem was improper. The first of these is that there are conflicting interests. It should be noted that the alleged conflict is between the wards themselves, not that the appointed guardians have any personal interest in conflict with their wards. This distinction is one of great materiality. Where the ward's interests are contrary to the guardian's, the situation is intolerable and a forthwith removal is the only solution. Where the claim is that the two or more wards have interests that conflict among themselves, the situation bears further investigation and may be subject to different disposition. The claim of conflict here arises from the death of the settlor and the fact that the three infants are the residuary legatees of his estate. This fund will also be the source of the funds from which the settlement will be paid. As residuary legatees their shares are equal. But as there is no trust for Toby, she will not only participate to a lesser extent in the funds taken from the residuary estate than her sisters will, but a part of the funds that would otherwise come to her as a residuary legatee will go into the trusts for her sisters and very probably she will never have any return from them. On the surface it would appear that her interest is diverse from that of her two sisters. The so-called general guardians urge that under the circumstances a guardian for her should not only oppose the settlement but interpose defenses to the claim, not

realizing, perhaps, that it is no part of the duty of a guardian to urge a defense that is untenable even if it is to his ward's advantage.

The guardians ad litem claim that the conflict is not realistic and that decision on it is not appropriate. The argument on the first claim is that whatever money comes to Toby from the trust will be tax free. What she receives from the estate will be the balance after taxes have been deducted. Approximately $1,500,000 will be transferred if the settlement is effected. Of this, one third, or $500,000, would have been Toby's share. As a trust beneficiary she will receive only one third of that sum, disregarding what may possibly come to her in the event that she survives either sister and there is a default of issue. If the estate taxes amount to more than two thirds of the residue, however, she will nevertheless gain from the transfer to the extent that the taxes exceed 66⅔%. No calculation or proof has been submitted on this point possibly because at this time no accurate determination can be made. The claim was not denied on argument and if it is sound there is no conflict.

On the other ground, that the issue is not to be considered, the argument is that any settlement would require the approval of the Probate Court in New Jersey. Obviously, the executors would not jeopardize themselves by an obligation which that court did not approve. If that court refused to countenance the settlement, the means to make it effective would not be forthcoming. The executors have already sought that approval. On their application this precise question of the conflict presented by the different position of Toby was raised. The court met that problem by appointing guardians whose sole duty, it appears, is to see that the rights of all three infants as residuary legatees are protected. The New York guardians ad litem are charged solely with the duty of protecting the rights of the infants as beneficiaries of the trusts. The infants' rights as legatees are protected in the appropriate forum. As this question of divergent interest has arisen in that forum where it naturally belongs and steps for its determination have been taken, it is not of moment here. This court and the guardians appointed by it are concerned with the interests of the infants as beneficiaries. While it would be fitting to have in mind their eventual welfare, as distinct from any immediate benefit, where that is being cared for properly, this court can concern itself with their situation as beneficiaries and in that there is no conflict.

 

Quite aside from the question discussed, it is urged that the guardians ad litem were improperly appointed and an application is properly before this court to vacate the orders appointing them and to appoint in their places, the movants, the so-called general guardians. It appears that on December 29, 1949, applications were made by and on behalf of these infants for the appointment of general guardians in the Surrogate's Court of Westchester County. On January 3, 1950, the Surrogate appointed Roy W. Aylesworth as general guardian for each of them. The guardians ad litem here were appointed on May 9, 1950, by an order nisi which was made absolute on June 5, 1950. No notice of the application or otherwise was given to this general guardian. The orders were made pursuant to section 206 of the Civil Practice Act. This section provides that in the case of a nonresident infant the court may designate a guardian ad litem unless the infant or some one on his behalf procures a guardian to be appointed within a specified time of service of a copy of the order. It also provides that the court must give special directions as to the service of the order. It is not disputed that the orders contained provisions for service (by mail on the infants and their mother) and that these were complied with and that no application for a guardian of the infants' selection was made. There is however an issue of fact as to whether the infants were at that time residents of New Jersey.

Movants base their argument on section 204 of the Civil Practice Act, which provides that where application is made for a guardian ad litem by someone other than the infant, notice must be given to his general guardian if he has one within the State. If he has none the section provides that he be given notice if he is upwards of fourteen years and within the State and if he is under fourteen and in the State, to the person with whom he resides.

The question therefore (assuming for the time being the question of residence) is whether the provision for notice to the general guardian in section 204 of the Civil Practice Act is a jurisdictional requirement for the appointment of a guardian ad litem pursuant to section 206 of the Civil Practice Act. The specific question has not previously been decided but there are two decisions on related points that are of value. In 1910 the Appellate Division had before it the question of whether an action had properly been begun by the service of a summons on a guardian ad litem without service on the infant. (*Taylor v. Emmet*, 137 App. Div. 202.) At that time the exact words of

section 206 were in section 473 of the Code of Civil Procedure but they were coupled with an additional sentence providing for service of a summons upon the guardian so appointed. Section 471 of the Code of Civil Procedure contained the provisions now found in section 204 of the Civil Practice Act, but also coupled with a provision for service of a summons. The court reached the conclusion that the two sections were entirely distinct methods of appointing guardians ad litem, the earlier numbered section providing for the instance where a summons had already been served and the later section for the situation in which no summons had been served.

There was no further adjudication on the point until after adoption of the Civil Practice Act and after the provisions for service of the summons had been deleted from the respective sections. In this situation the court had before it an application to vacate a judgment on the ground that an infant had not been properly represented because his guardian ad litem had not been properly appointed. The facts were that the application to appoint a guardian ad litem was made by the general guardian of the infant under section 206. No provision was made for service on the infant or the person with whom he resided. The court held (*Railroad Fed. Sav. & Loan Assn.* v. *Wolchyk,* 251 App. Div. 568) that the two sections must be read together and in view of the provision in section 204 for service on the general guardians, that when such person makes the application no further notice is required, and the court refused to disturb the proceedings already had in that action. It is now argued that this decision makes the notice required in section 204 a jurisdictional requirement under section 206. The very statement of such a proposition is its own refutation.

The issue of fact, above referred to, as to the residence of the infants at the time of the issuance of the order (May, 1952) remains for consideration. The original petition was made and verified by each of the infants (being then over the age of fourteen years) and each swore that she lived with her mother at 251 Dana Place, Englewood, New Jersey. There is a wealth of evidence supporting this statement. The only contrary statement is an affidavit made by the infants' mother on February 3, 1953. When confronted with the contradictory evidence she amplified her previous affidavit by stating that while it was true that the infants moved with her to New Jersey in March, 1952, two of them still commuted to Westchester to school daily and to avoid difficulties with the school authorities she considered herself still a resident of Westchester. This may explain her

previous affidavit but it also disposes of the issue of residence.

There is also a very serious question as to whether the movants themselves have any standing in this court. That question is whether a " successor general guardian " can be appointed for infants who are not in this State and have no property here. What interest does such a guardian protect and what is he in any position to be a guardian of? In view of the above, haply, it is not necessary to answer.

The motion for a stay is denied. The action is adjourned to March 30, 1953. The interval is allowed to the movants to seek a stay to review this disposition if they so elect.